Case 23-3936 Leah Prida v. Option Care Enterprises, et al. Argument not to exceed 15 minutes per side. Mr. Connors, you may proceed for the appellant. Good morning. My name is Tom Connors. I represent Leah Prida. The main issue presented in this case is whether plaintiff has plausibly pled a valid religious belief or practice in support of her failure to accommodate claim. As you know, the district court held that she had not, that she had only alleged secular beliefs and practices. The recent Lucky case, which resolves almost all of the issues in this case, did not address the line between the religious and the secular because it assumed the religious nature of the belief presented in that case because it was based on a practice based on prayer to God. The only way to address the line between the secular and the religious is to define religion and its corollary, the secular. The Supreme Court requires that constitutional terms are to be defined in accordance with their ordinary public meaning. And they have relied on Johnson's Dictionary on three separate occasions in recent cases involving constitutional terms of the Second Amendment, the Fourth Amendment, the Elections Clause. Johnson's Dictionary defines religion as virtue, which is moral goodness founded on reverence of God. The Supreme Court has also held forth, not as directly, but provided guidance. They say that what is necessary for a belief to be religious is that it must stem from a belief about what is right or wrong. And the idea of a supreme being, they define that broadly, supreme reality, God, who somehow communicates what is right and should be done and what is wrong and should be shunned. So I take it the complaint suggests, or at least could be read to suggest, that your client refused the testing because it was carcinogenic and her religious beliefs suggested that she should not put harmful things in her body. So setting aside her religious beliefs, assume it was religiously motivated, but assume that that religious motivation wasn't there, would she have put the carcinogenic thing in her body anyway? So did the religious belief make the difference? It strikes me that if she thinks this is harmful, even if it wasn't motivated by religion, she still would not have wanted to put harmful things in her body. You're asking me to speculate about her state of mind. I would say no, but I don't know. So she still would not have taken it? The reason I'm asking is because the statute uses causal language. And if the religion wasn't a but-for cause, which is the concept that many courts have used, then query whether it was because of the religious practice. Because if she still would not have taken the testing because of its harmful effects, why would you read the statute to say it was because of religion? Well, it does have to be religious. So you're saying if it was not religious, it wouldn't be covered. Yeah, but but-for-cause always asks the counterfactual. I agree with you. But you could read the language to say that we're supposed to engage in this counterfactual. I mean, I agree there's a line between the religious and the non-religious. So if the assumption is that her rationale was non-religious, it would not be protected. Do I know what she would have done in that context? No, I don't. So what I am suggesting is that the essence of the definition of religion is right action based on ideas somehow communicated by a supreme being. Title VII as amended. In the workplace, she thought the air quality was bad. Can she say they have to accommodate her by allowing her to work from home because of her religion? If she has some-proffers a religious belief, she can request an accommodation. It's obviously limited by concepts of undue hardship. So we're not talking about blanket privilege or carte blanche freedom here. We are talking about a statute that does protect religious practice broadly with the exception that it must not put an undue burden on the employer. I understand your question to go to the issue of whether this is too broad. And that was and is a major objection to this interpretation. I would respond in two ways to that. First, it's not true. Undue hardship, this is Title VII, limits this. Secondly, whether or not it's too broad is a policy question. So people are free to think whether it may be too broad or not too broad. But that policy decision was resolved by Congress in 1972 when they adopted this amendment. And what's your best case for this expanse? What is your best case for this expansive interpretation of religion being the causative factor? You just said this is my interpretation. I understand from the argument in briefing. So I'm asking you what case is – what's your best case for supporting that broad interpretation? Seeger and Welsh. I think they speak relatively clearly to this issue. And to get to the heart of this, if you will, there is an effort – what is this distinction between religious and secular? There is a – the position was, well, if it's medical or philosophical or sociological or political, then somehow it's automatically secular. And the answer to that is no. Those views can be either religious or secular depending upon whether they're based on right action that is somehow derived from an understanding somehow communicated by God. And that is expressed in Seeger and Welsh directly. What is the limiting principle on that that would prevent that from being just anything you want to say is your faith or your idea or your philosophy being sufficient to qualify for a discriminatory action on the basis of religion? The limiting principle is sincerity. If you are not – Well, but that's on – the law tells us that that cannot be questioned. No, sincerity can be. It's a question of fact. And if people – if the view is that this is not sincere, that can be challenged. But beyond that, no. And you know why? Because to assess a religious belief, you have to go into the state of mind of the believer and you have to determine whether or not they – valid if we're challenging validity, whether they are actually basing it on an idea somehow communicated from God. And Seeger said that is an inquiry foreclosed to government. So the limiting principle is sincerity. Validity of a belief, if we get into the place where we're going to analyze whether or not a belief is validly religious, then this court will become – will be in the place of assessing the validity of religious beliefs. How do you – how would you go about questioning sincerity? So I could imagine a deposition in which they ask your client questions about other harmful things she might put in her body. Does she drink alcohol? Does she – are there other types of things? Would it then just become a question of fact for the jury? Correct. I don't know how – that I can survey all of the context of fact. But it would be – it would be circumstantial evidence to suggest that she really doesn't believe this given her other conduct. State of mind almost always has to be done on circumstantial evidence or the person openly acknowledging what they're thinking. Can I ask you a quick question about retaliation? She gave like a 20-page statement which included a number of things, whether Justice Jackson's statement at Nuremberg, all kinds of things, and then had a reference to Title VII. Is that enough? Yes. What if she just put, and you're violating my rights under the U.S. Code, would that be enough? I'm not sure, but that's not the case. I hadn't thought about that. But so one sentence in a 20-page document is enough and they're obligated – you're assuming they read it and then retaliated as a result. The standard for pleading is plausible, and she has passed the plausibility test. She has said, I am challenging your testing mandate because it violates Title VII. Yes, there's 20 pages of other materials that were not related. I agree. But she did say that, and therefore she qualifies under the plausible pleading standard. Thank you for your argument. You'll have your rebuttal time. Good morning, Your Honors. May it please the Court, my name is Jeff Kuyper. I'm appearing on behalf of the Appalachian Option Care Enterprises and Clinical Specialties, Inc. I'll refer to them both as Option Care. I'm here to urge this Court to affirm the District Court's dismissal order. How do we deal with Sturgill? Sturgill? That's a great question, because on the surface that's directly on point. But I believe it's factually distinguishable from this case, because number one, it only dealt with the vaccine. But it's a harmful substance in my body which violates my religion. Same scenario. Same scenario, but I think there's a marked difference between having a religious objection to a vaccine coming into your body versus a testing instrument. Why? If one introduces, if she believes one introduces a carcinogen, and, I mean, why is it if you think the vaccine's harmful, you think the test introduces something into you that's harmful? I mean... Well then, it's a matter of how Sturgill pled her religious accommodation claim. She did not introduce pages and pages of medical and chemical and political and legal objections. She kept it confined to her sincerely held religious beliefs. So now, for them to protect their religious belief, they have to introduce less, not more? I think that's a fair way to summarize it, because I think Ms. Prita, in contrast to Sturgill... But why, if you're trying to show, right, she introduced all that stuff to show it was harmful? Correct. It was harmful based on the medical concerns. And those were going to be in existence whether or not her religion prevented her from having it. Sorry. Go ahead. That was me. Why isn't that for summary judgment? Say that again, please. Why isn't that for summary judgment? I mean, because at this point, we accept her well-pleaded allegations. Yeah, I think there is enough in the amended complaint taken as a whole. And by that, I mean the affidavits, the email correspondence, because this happened in stages. According to the amended complaint, there was the request, double request for exemption from the vaccine. The employer said, okay, you're exempted from that because we understand that to be a religious concern related to abortion-derived fetal cells. However, a condition of that accommodation is to undergo weekly testing. And after that response came out, Ms. Prita followed it up with a four-page email, which really focused almost entirely on the medical harm with links to CDC websites and NIH websites and studies from Oxford University, all going to the harmful chemicals involved in the swab testing. After that came the about a 20-page notarized affidavits, which were predominantly, heavily predominantly, non-religious reasons why she objected to testing. At the pleading stage, and I'm looking at paragraph 40, and it says she could not subject herself to the testing because of the chemical a known carcinogen is used in the cotton swab in the PCR test. So far, good for your point of view. But then she says, vaccines and or testing, so testing, violate his requirements set forth for us in the Bible. Plaintiff quoted 1 Corinthians 6, chapter 6, verses 19 to 20, that our bodies are the temple of God. Plaintiff could not alter her God-given body or risk the potential harm either from the vaccine or the chemicals in the testing. Plaintiff reiterated her religious belief prevents her from putting a known human carcinogen in her body, stating this all relates to what I believe in, how I should care for, and what I should do with my temple of God. I mean, this is pretty specific allegation in the complaint that we have to accept as true. And it is saying that the reason she is not taking the testing comes from her views of the Bible. Yes, I mean, acknowledge that obviously is in there. But not to be flippant about it, but I would argue that with the volume and the detail and the number of non-religious factors that she presented to option care, in addition to that, the religious objections were almost fully obscured and what option care saw was. What pleading standard? I thought we would have to take the complaint in the light most favorable to the plaintiff. I mean, you're basically saying it's confused and therefore they haven't pleaded enough. I mean, that did not strike me as particularly confused, to be honest. But you're essentially saying we should interpret the complaint in the light most favorable to you. What I'm saying is we should interpret the complaint as a whole. And in this situation, the complaint as a whole is an awful lot of information that's been presented. It's almost to the point where it could be a summary judgment kind of standard because there's notarized affidavits, which is sworn testimony. There's exhibits in the form of email. You could have moved for summary judgment, but you moved to dismiss. Excuse me? You could have moved for summary judgment. Well, we didn't believe we had to because of the way the complaint was presented. And then we have to review it under 12b-6. Yes, and I do believe even reading the complaint as a whole in the light most favorable to Ms. Prita, it still doesn't put option care on fair and reasonable notice that it was the religious aspects of her concerns about testing that motivated her. And that certainly didn't motivate option care. They didn't. Given the way the concerns were presented, they wouldn't have zeroed in on the religious statements in there. They did that for the vaccine, but the way it is presented, they did not focus on the religious aspects relative to the testing. Help us understand or give us your thoughts on the review, what type of review we would do. We know the standard for a motion to dismiss. Your suggestion is that religion was overcome or obscured by medical or practical reasons, and so less would have been better. Tell us what the limiting principle would be for review if we followed your argument that less is better and all the complaint says is this is my faith. I don't want to do this. I'm an employer. You can't make me. This is religious discrimination, and I sincerely believe this. I cannot, particularly in light of how the wording is interpreted, depending upon your opposing counsel's view or some other views that are in the law, I don't see a limiting principle in that sort of claim. Do you see a limiting principle in review of that sort of claim, or is anything declared to be my religious belief or God told me going to be sufficient to state a claim? I would answer that, Your Honor, that the pleading must raise a plausible inference of a violation of Title VII. And going back to what Judge Murphy pointed out about the but for and the because of language, there has to be a plausible inference that the employer took action based on the religious aspects of the concerns that were stated, and I'm saying that the amended complaint taken as a whole does not do that. Fair and reasonable notice to the employer is one of the standards by which you create a reasonable inference of a Title VII violation, and that did not happen. Even under your argument, even if then in fact in the summary judgment motion, as Judge Sipar referenced, and the statements of the law, the undue burden, you think that that would be then litigated at the summary judgment stage instead. But you think that it should be litigated at the motion to dismiss with the plausibility standard? That's correct, Your Honor. Part of the purpose of Rule 12b-6, according to the precedents, is to identify cases that are doomed not to succeed as a matter of law to prevent the parties from having to go through burdensome litigation and discovery and all the rest. This is such a case because of the way that it was pled. And I would add one more point that goes a little bit beyond what you've been asking, is that Ms. Prita, on multiple occasions in her submissions to option care, said that it was her choice what to put into and what not to put into her body. I think the quote was, I do not take lightly what I choose to put in my body and choose not to put in my body. And that was repeated multiple times in the affidavits. I believe the fact that she is saying her religion gives her a choice whether or not to accept that testing with ethylene oxide on it renders it not in conflict with her religion. She could just as easily have chosen, I'd like to get tested because I want to make sure I'm not exposing my coworkers to the COVID virus. The choice eliminates a direct conflict between the religious beliefs and the employer's policy. And in the DeVore v. University of Kentucky decision, that was made very clear. And by pleading that she had this choice, in my view, Ms. Prita pretty much said, this is not a religious conflict, this is a personal choice conflict, and I choose not to undergo testing. And therein lies why the employer would have been induced to really focus on the medical and the chemical factors that she presented as her reason for seeking exemption. Can I ask about the but-for-cause analysis? So suppose there's an employee who refuses to take a COVID vaccine for two reasons. The first reason is the reason that the employer here mentioned might have been created through aborted cells or something, so there's a religious objection. And then the second reason is just a scientific, they were kind of rushed to the market. So that the plaintiff has a religious motivation for refusing to take the vaccine, and also just a health motivation. If you fire that plaintiff for not taking the vaccine, do you think that the plaintiff could seek protection in Title VII because of the religious motivation? Or do you think the independent health motivation would do that claim? Well, if it's mixed motive, I think is what you're asking, there's a bona fide sincere religious belief that's articulated as an opposition to the vaccine or the testing. And then a clearly articulated, and also it's a medical problem for me, I don't want to do it. I would say in that hypothetical, that would be covered by Title VII, because the claimant specifically started with and referenced a religious objection. And I think you mentioned abortion and fetal cells. That's a direct conflict with religious beliefs and vaccination, no matter what happens. There's no choice involved. A person who believes that abortion is gravely wrong and against her religious beliefs is always going to choose, or she can't even choose. She's not going to have the vaccine because it's a conflict. That's the difference, Your Honor. And she did identify abortion-derived fetal cells in relation to the vaccine itself and then moved into almost exclusively focused. So that would not be a but-for cause, but I think Title VII, just as a motivating factor, causal analysis between the tangible employment action and the motivation, would that be the reason? So you basically conceded that religion doesn't have to be a but-for cause of termination. Yeah, I think that's correct. And it has to be pled in such a way that it's plausible that it was. It has to raise an inference that but-for the religion, the employer would not have taken the challenged action. And in this case, I think that's absent from the pleadings. I've probably said more times than you need to hear, but the focus was so much on medical concerns and such a volume of reasons why the testing was objectionable that, as I said earlier, it was obscured in the view of the employer. I see that my time's up and would ask if you have any other questions. I'd be happy to entertain them. Thank you. Thank you, Your Honors. Regarding the argument that they were not on notice of the religious nature of the claim, there's two filings here that are relevant. The accommodation claim starts with an accommodation request. The affidavit came later and relates to the retaliation argument. It's clear from the accommodation request that there was a religious nature. It starts with, I was raised as a Christian. I continue to follow God, and I strongly believe the vaccines and testing violate his requirements. No question. The affidavit, we suggest that somehow Title VII was obscured. For whatever reason, he detailed it. He quoted all of it. It's clear that Title VII was referenced in her affidavit, which is in support of her retaliation claim. Even if they weren't on notice, the underlying argument here is that because Leah brought up medical reasons, somehow that automatically means it's only secular. And there's no argument to support that. Seeger and Welsh clearly, well, I can't say clear because it's difficult, but they did say that that is not a sufficient basis for defining whether a belief is religious. A medical, political, philosophic consideration can also and is a part of an aspect of a action that is either religious or secular. This divide between the medical as being secular and not religious is incorrect. It's a misunderstanding. Regarding the retaliation claim, that involves Abercrombie, which brings us into a different place than you find in normal discrimination claims. The discussion is that whether the motive to avoid the accommodation is the violation, not whether you're treating a practice differently than another practice. It's hard to understand all of the reasoning behind that. I know, though, that that is the holding of Abercrombie. So for accommodation cases, we have to look at and we have to apply Abercrombie. Can I ask you, in your complaint on the retaliation claim, you said that the harmful action that they took in retaliation for your Title VII advocacy was, it seemed to imply you were suggesting was not just the termination, but also the refusal to allow her to work from home, because it seemed like there were allegations that they were letting other employees work from home.  Are you using that as an independent, tangible employment action, the refusal to allow her to work from home in retaliation for her advocacy? The refusal to allow her to work at home would come under the failure to accommodate. Well, I was thinking it could also actually be a tangible employment action, where you are physically located. Yes, it serves both purposes. The district court only seemed to suggest that the termination was the only thing you were arguing for. They retaliated against you for your Title VII advocacy or opposition practices by firing your client. You could also arguably say the complaint suggested they retaliated against you by not letting her work from home. Correct. I think it would fit within both theories. By the way, you mentioned motivational factor and Bostock. Bostock recognizes two pathways to relief under Title VII. One, the but-for causation approach, which means that the protected trait does not have to be the sole or main reason, but that's just one. It only has to be a but-for cause. But motivational factor is part of Title VII, so that also would be a reason. And the Jones case from the Sixth Circuit clearly held that that's all you need. So that's all I have, unless there's any further questions. No. Thank you. Thank you both for your briefing and your argument. It will be taken under advisement and the opinion rendered in due course.